IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| GEORGE T. BRONK, | OPINION AND ORDER |
| Plaintiff, | |
| | 12-cv-832-wmc |
| v. | |
| JUDGE THOMAS S. UTSCHIG, | |
| Defendant. | |

---

| | |
|---|---|
| GEORGE T. BRONK, | OPINION AND ORDER |
| Plaintiff, | |
| | 12-cv-833-wmc |
| v. | |
| TRUSTEE JOHN M. CIRILLI, | |
| Defendant. | |

---

Plaintiff George T. Bronk has filed two, separate civil rights lawsuits in this court under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), both of which arise out of his father's underlying bankruptcy proceeding. The first of the two cases ('832) names the presiding United States Bankruptcy Judge, Thomas S. Utschig, as the defendant; the second ('833) names a bankruptcy trustee employed by the United States Department of Justice, John M. Cirilli, as the defendant. Plaintiff proceeds *pro se*.

Although plaintiff paid the filing fee for both cases, a district court is authorized to conduct limited screening and to dismiss, *sua sponte*, a fee-paid complaint if it appears the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit,

or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)); *see also Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding that "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances"). *Sua sponte* dismissal is also appropriate where claims lack "legal plausibility necessary to invoke federal subject matter jurisdiction." *Apple*, 183 F.3d at 480. Given the overlap, the court takes up these two cases together for screening purposes.

In screening any *pro se* litigant's complaint, the court must construe the claims generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Even viewing the pleadings in this light, however, the court concludes that both complaints must be dismissed for the reasons set forth below.

## FACTS[1]

Plaintiff George T. Bronk is a resident of Amherst Junction, Wisconsin. His father, Leonard D. Bronk,[2] has been embroiled in a bankruptcy case in the United States Bankruptcy Court for the Western District of Wisconsin, Eau Claire Division. *See In re Leonard D. Bronk*, Case No. 09-15224-7 (W.D. Wis.). Mr. Bronk also has been subject to

---

[1] The facts in this case are taken from the pleadings, attached exhibits and the electronic record from a bankruptcy matter in this district. *See Leonard D. Bronk v. John M. Cirilli*, Case No. 11-cv-172-wmc (W.D. Wis.).

[2] For purposes of clarity, the court will refer to George T. Bronk as "plaintiff" and to Leonard D. Bronk as "Bronk" or "plaintiff's father."

an adversary proceeding filed by John M. Cirilli, as a court-appointed trustee of the bankruptcy estate. *See John M. Cirilli, Trustee, v. Leonard D. Bronk*, Adversary No. 10-44 (W.D. Wis.). United States Bankruptcy Judge Thomas S. Utschig presided over both proceedings.

Some of the facts underlying the Bronk bankruptcy proceedings are set forth in a lengthy published opinion, *see In re Bronk*, 444 B.R. 902 (W.D. Wis. 2011), and will not be repeated here. Instead, it is sufficient to note that Mr. Bronk, a retiree with modest means, incurred substantial debt relating to medical care for his late wife. Bronk filed a Chapter 7 bankruptcy petition on August 5, 2009, hoping to discharge some of that debt. In the adversary proceeding, the trustee argued that discharge should be denied because Bronk made several fraudulent transfers shortly before filing for bankruptcy and that he did so with an intent to hinder, delay or defraud creditors. In particular, Cirilli alleged that Bronk converted some of his assets by taking a loan out on his home and using the proceeds to purchase an annuity and several educational savings plans for his grandchildren.

In a ruling entered on January 7, 2011, Judge Utschig determined that Bronk was entitled to discharge and dismissed the adversary proceeding, finding no intent to commit fraud on Mr. Bronk's part. Judge Utschig found that the annuity qualified for a full exemption as a retirement annuity, but disallowed the exemptions claimed by Bronk with respect to educational savings plans that he purchased for his grandchildren. Both Bronk and the trustee appealed. On September 28, 2012, this court vacated Judge Utschig's decision, reversed the allowance of an exception for the annuity and remanded

the matter for additional findings about the nature of the annuity that Bronk purchased shortly before filing for bankruptcy. This court affirmed the order in all other respects.

On remand, Judge Utschig held an evidentiary hearing on November 26, 2012, in Eau Claire, after which he entered findings of fact and concluded that the annuity purchased by Bronk shortly before he filed for bankruptcy qualified for an exemption as a retirement annuity under Wis. Stat. § 815.18(3)(j). In conformity with the previous order entered on January 7, 2011, Judge Utschig entered judgment on November 29, 2012, as follows: (1) the exemption for the educational savings plans was disallowed and the trustee was obligated to distribute those funds to creditors; (2) the annuity "appears to sufficiently qualify for exemption under [Wis. Stat.] § 815.18(3)(j) and, as such, will be allowed"; and (3) the adversary proceeding is dismissed "as the Court concludes that there is not enough proof that Mr. Bronk transferred assets with the intent to hinder, delay, or defraud creditors."

In these pending *Bivens* suits, both dated November 19, 2012, plaintiff purports to act as the "primary family representative" in the bankruptcy proceedings involving his father. Plaintiff alleges that Judge Utschig violated his civil rights and portions of the Americans with Disabilities Act (the "ADA") during a telephonic hearing in Mr. Bronk's case on January 11, 2012, which concerned a motion to modify the stay that effectively froze his father's assets pending an appeal. Specifically, plaintiff, who has a "60% documented hearing disability," contends that he was unable to hear or understand much of the proceedings. Plaintiff also alleges that the attorney representing his father in these matters (Jared Redfield) made a request to hold the hearing in open court so that

4

plaintiff could hear the proceedings. Plaintiff argues that Judge Utschig's denial of that request violated his right to due process and the ADA.

Plaintiff argues further that Trustee Cirilli further violated his rights as well by failing to ensure that plaintiff was able to hear the proceedings. Plaintiff adds that Cirilli has "slander[ed] the credibility of Leonard Bronk and his family" by asserting that his father committed, or attempted to commit, fraud on the bankruptcy estate.

Arguing that the defendants' actions have resulted in a "miscarriage of justice," plaintiff asks for a "mistrial" to be declared in his father's case and for both defendants to be removed or disqualified from any further involvement with the Leonard Bronk bankruptcy matter. Plaintiff also asks for compensatory damages in the amount of $1,000,000 from Judge Utschig and $500,000 from Cirilli, as well as court costs and litigation expenses incurred by Mr. Bronk and his six sons during the bankruptcy case.


OPINION

## I. *Bivens* Claim

As a preliminary matter, it appears that plaintiff is attempting to litigate on behalf of his father or another interested party to the bankruptcy. However, plaintiff does not allege facts showing that he has authority to represent others in federal court; nor could he. Title 28 U.S.C. § 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel." This statute permits an individual to proceed *pro se* in a civil case in federal court "because he might be unable to afford a lawyer, or a lawyer's fee might be too high relative to the stakes in the case to

make litigation worthwhile other than on a *pro se* basis." *United States v. Hagerman*, 545 F.3d 579, 581-82 (7th Cir. 2008) (citing *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) ("most litigants who sue without a lawyer do so because they cannot afford one"); *DiAngelo v. Illinois Dept. of Public Aid*, 891 F.2d 1260, 1264 (7th Cir. 1989) (concurring opinion) ("there will always be cases where the stakes are so low, the plaintiff so reprehensible, or the cause so unpopular that . . . the case will proceed without the participation of counsel")).

The right to litigate *pro se* is personal to each individual and does not grant authority to prosecute an action in federal court on behalf of others. *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007). In other words, a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer in federal court. *See Lewis v. Lenc-Smith Mfg.*, 784 F.2d 829, 830-31 (7th Cir. 1986) (per curiam); *see also Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authorities)).

Plaintiff's pleading also fails to suggest any legally-protected interest in his father's bankruptcy proceeding, which raises a question whether plaintiff even has standing to sue in federal court. Article III of the United States Constitution limits the exercise of federal judicial power to the resolution of actual "Cases" and "Controversies." U.S. Const. art. III, § 2; *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007). To meet the case-or-controversy requirement, a plaintiff must demonstrate that he has "standing" to seek relief in federal court. *See Elk Grove Unified Sch. Dist. v. Newdow*,

542 U.S. 1, 11 (2004).   An essential element of standing requires a plaintiff to demonstrate that he has suffered an "injury in fact," meaning an invasion of a legally-recognized interest which is concrete, particularized, and actual or imminent. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  By contrast, claimed interest that is conjectural or hypothetical is insufficient to establish standing. *Id.*

To have standing to challenge a bankruptcy order, the challenger must be a "person aggrieved" by that order; in other words, he must demonstrate that he has "'a pecuniary interest in the outcome of the bankruptcy proceedings.'" *In re Resource Tech. Corp.*, 624 F.3d 376, 382-83 (7th Cir. 2010) (citations and quotation omitted).  Other than vaguely alluding to his status as a "family representative," the plaintiff does not point to *any* legal interest at stake in his father's bankruptcy.  Even assuming that plaintiff had some type of personal interest in the underlying bankruptcy matter, the pleadings contain no valid basis to proceed against the defendants for reasons explained briefly below.

Plaintiff filed this suit for civil rights violations under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  In *Bivens*, the Supreme Court recognized an implied private cause of action for damages against federal officers alleged to have violated a citizen's constitutional rights. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (discussing *Bivens*).  To establish a *Bivens* claim, a prisoner must articulate facts showing that a constitutional violation has occurred. 403 U.S. at 395-97.

7

Liberally construed, plaintiff contends that the defendants interfered with his constitutional right of access to the courts because he could not hear all of the proceedings at a telephone conference held in his father's case on January 11, 2012. Individuals have a right to obtain access to the courts and to pursue redress of grievances without undue interference. *See Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). "The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process." *Id.* (citing *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995); and *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) ("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses.")). A corollary of that right is that efforts by state actors to impede an individual's access to courts or administrative agencies may provide the basis for a constitutional claim. *See Vasquez*, 60 F.3d at 328.

The pleadings reflect that plaintiff attended the telephone conference on January 11, 2012. At that hearing, which was transcribed by a court reporter, counsel for Leonard Bronk requested relief from the bankruptcy stay so that his client could access some of the funds. Although claiming that the sound quality compromised his ability to listen in (which is all plaintiff had a right to do, since he neither clams to have moved to intervene or even to appear) plaintiff indicates that he was later provided with a transcript on January 27, 2012. Yet there is no indication that the plaintiff took any step to appear in the case *or* to seek other relief from the upshot of any ruling by the court.

8

Assuming then that plaintiff even had a legal interest at stake in the proceedings, *and* that his participation was compromised by an inability to hear everything that transpired, plaintiff does not allege facts showing that he was harmed. This is fatal to his claim. The right of access to courts is violated only when a litigant is denied access and suffers actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996). Because plaintiff fails to allege any injury or efforts to mitigate, he fails to allege that a constitutional violation occurred and he does not state a claim upon which relief can be granted under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

## II. ADA Claim

In addition, plaintiff attempts to invoke relief under Title III of the ADA, which prohibits discrimination in the context of public accommodations.[3] *See* 42 U.S.C. § 12182(a). Plaintiff notes, in particular, that Title III requires public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Plaintiff insists that, by holding a hearing over the telephone rather than in person, the defendants violated his rights under Title III of the ADA by failing to ensure that he

---

[3] Title III of the ADA provides, in pertinent part, that –

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

could hear the proceedings or effectively communicate with the court.

As an initial matter, plaintiff does not show that Title III of the ADA applies. By definition, Title III regulates "private entities" operating "places of public accommodations." 42 U.S.C. §§ 12181(6), (7); 42 U.S.C. § 12182(a); *see also Torrence v. Advanced Home Care, Inc.*, No. 08-2821, 2009 WL 144448, at *3 (N.D. Ill. May 21, 2009) ("To state a claim under Title III, a plaintiff must allege that: (1) he is disabled; (2) defendant is a private entity which owns, leases or operates a 'place of public accommodation'; and (3) he was denied the opportunity to participate in or benefit from services or accommodations on the basis of his disability."). The individual defendants, both of whom are publicly employed by the federal government, do not appear to fit within the statutory definition found in Title III.

Plaintiff fares no better under Title II of the ADA, which prohibits discrimination against a qualified individual with a disability regarding a public entity's "services, programs, or activities." 42 U.S.C. § 12132; *Wisconsin Community Svcs, Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006). As such, Title II of the ADA prohibits barriers in courthouses and courtrooms that have the effect of denying disabled individuals the due process right of access to the courts. *See Tennessee v. Lane*, 541 U.S. 509 (2004). It is well-settled, however, that federal courts, as agencies of the federal government, are exempted from Title II disability discrimination claims because a "public entity" is defined limited to "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State of States or local governments." 42 U.S.C. § 12131(1)(A) & (B); *Dyrek v. Garvey*, 334 F.3d 590, 597 n. 3

10

(7th Cir. 2003) ("the ADA does not apply to federal agencies"); *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) ("[T]itle II of the ADA is not applicable to the federal government.").

This not to say that federal courts are unconstrained by authority that requires an accommodation for the hearing impaired or other individuals who have difficulty communicating as the result of a disability. By statute, a federal court may appoint a certified sign language interpreter for "a party, witness, or other participant in a judicial proceeding" if such person "suffers from a hearing impairment." 28 U.S.C. § 1827(l). In addition to this statute, the Judicial Conference of the United States requires federal courts to provide "sign language interpreters or other auxiliary aids and services to participants in federal court proceedings who are deaf, hearing impaired or have communications disabilities[.]" 5 GUIDE TO JUDICIARY POLICY § 255.20. Auxiliary aids and services include "qualified interpreters; assistive listening devices or systems; or other effective methods of making aurally delivered materials available to individuals with hearing impairments." *Id*. at § 225.20(c)(4). Participants in court proceedings include "parties, attorneys, and witnesses." *Id.* at § 225.20(c)(1). Courts are not required to make accommodations for spectators, however, though they *may* do so "when deemed appropriate," such as to allow "the deaf spouse of a defendant" to follow the course of a trial. *Id.*

Here, plaintiff does not claim that he was a participant in the January 11, 2012, hearing, nor that this particular policy required an accommodation. To the extent that plaintiff could be deemed to have appeared at the hearing in his capacity as a "family

11

representative," he does not allege to have advised the bankruptcy court of any special circumstances that would have warranted the appointment of an interpreter or the provision of an auxiliary device. At most, plaintiff alleged that his father's counsel advised the court of his hearing disability, but not of the *need* for plaintiff to participate in any way. Moreover, since no *injury* potential for a reoccurring injury is alleged, plaintiff may not proceed.

In short, the pleadings do not, in this court's view, establish a breach of policy. In any event, the allegations would not support the removal of either defendant in this case or an award of damages.


## III. Judicial Immunity

Though unlikely, perhaps the other defects discussed might be addressed by repleading, but plaintiff faces another, insurmountable hurdle in that he seeks to sue two judicial officers for actions taken in their official capacities. The doctrine of judicial immunity establishes the absolute immunity of judges from liability for their judicial acts. *Mireles v. Waco*, 502 U.S. 9 (1991). This immunity is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, who has an interest in a judiciary free to exercise its function without fear of harassment by unsatisfied litigants. *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see also Forrester v. White*, 484 U.S. 219, 225 (1988) (observing that judicial immunity discourages inappropriate collateral attacks and protects judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants) (citing *Bradley v. Fisher*, 13 Wall. 335, 348 80 U.S. 335 (1872)).

Plaintiff's allegations here fall far short of those necessary to deprive Judge Utschig of absolute immunity. *Mireles*, 502 U.S. 11-12 (noting that allegations of bad faith or malice are insufficient to defeat absolute judicial immunity, which may be overcome only by showing that the complained of actions were nonjudicial in nature or were taken in the complete absence of all jurisdiction). Indeed, the only claim being brought against Judge Utschig *concerns* a judicial ruling. Therefore, the complaint against Judge Utschig must be dismissed.

Likewise, plaintiff's allegations against Cirilli concern actions taken in his official capacity as the court-appointed bankruptcy trustee. A bankruptcy trustee may be held personally liable only for a willful and deliberate violation of his fiduciary duties. *In re Chicago Pacific Corp.*, 773 F.2d 909, 915 (7th Cir. 1985) (citing *Mosser v. Darrow*, 341 U.S. 267, 272 (1951)). Because plaintiff does not allege a violation of this kind, Cirilli also is entitled to an absolute quasi-judicial immunity from suit for the actions taken as court-appointed trustee for the bankruptcy estate. *See Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986) ("[A] trustee in bankruptcy . . . is entitled to derived judicial immunity because he is performing an integral part of the judicial process.").[4]

---

[4] Plaintiff also requests injunctive relief in the form of an order removing or disqualifying the defendants from further involvement in his father's bankruptcy proceeding. Procedurally, his request is improper because it does not appear that plaintiff's father -- as the real party in interest -- made such a request in the bankruptcy court. Moreover, plaintiff does not articulate facts that would support a finding of misconduct on the part of the trustee or impermissible judicial bias that would warrant Judge Utschig's recusal. Finally, any such request for removal appears mooted at this point by the judgment entered on November 29, 2012.

Because plaintiff does not provide facts showing that he is entitled to the relief that he seeks, his complaints against both defendants will be dismissed for failure to state a claim upon which relief can be granted.

## ORDER

IT IS ORDERED that the complaints filed against Judge Utschig and John M. Cirilli by the plaintiff, George T. Bronk, are DISMISSED with prejudice.

Entered this 17th day of December, 2012.

BY THE COURT:

WILLIAM M. CONLEY
District Judge

14